JONATHAN GARRITY, D/B/A CAMBRIDGE HANOVER AVIATION PARKWAY ASSOCIATES, BROWNING-FERRIS INDUSTRIES, INC., A CORPORATION, AND BOBBY L. MURRAY, PETITIONERS v. MORRISVILLE ZONING BOARD OF ADJUSTMENT, SOUTHPORT BUSINESS PARK, LIMITED PARTNERSHIP, AND MORRISVILLE ASSOCIATES, A NORTH CAROLINA GENERAL PARTNERSHIP, RESPONDENTS

No. 9310SC544

(Filed 21 June 1994)

1. **Zoning § 109 (NCI4th)— site plan approval by town commissioners—N.C.G.S. § 160A-388(b)—no appellate jurisdiction by board of adjustment**

   The provision of N.C.G.S. § 160A-388(b) giving a board of adjustment the authority to hear and decide appeals from an order or decision made by "an administrative official" charged with the enforcement of a zoning ordinance did not give a zoning board of adjustment the authority to decide an appeal from a decision by the town board of commissioners approving a site plan since the board of commissioners is not a "person" and is thus not an "official" within the meaning of the statute.

   **Am Jur 2d, Zoning and Planning §§ 745 et seq.**

2. **Zoning § 109 (NCI4th)— site plan approval by town commissioners—N.C.G.S. § 160A-388(c)—no appellate jurisdiction by board of adjustment**

   The provision of N.C.G.S. § 160A-388(c) stating that a board of adjustment "shall hear and decide all matters referred to it or upon which it is required to pass under any zoning ordinance," when considered with town zoning regulations which allow the board of adjustment to hear appeals from an order or decision

made by "other administrative officials" in the carrying out or enforcement of any provisions of the ordinance, did not give a zoning board of adjustment the authority to decide an appeal from the town board of commissioners approving a site plan since the commissioners are not administrative officials.

**Am Jur 2d, Zoning and Planning §§ 745 et seq.**

3. **Zoning § 109 (NCI4th)— site plan approved by town commissioners—N.C.G.S. § 160A-388(c)—no appellate jurisdiction by board of adjustment**

Language in N.C.G.S. § 160A-388(c) stating that a zoning ordinance "may also authorize the board to interpret zoning maps and pass upon disputed questions of lot lines or district boundary lines and similar questions as they arise in the administration of the ordinance" did not authorize a zoning board of adjustment to decide an appeal from a decision of the town board of commissioners approving a site plan since this language merely lists specific powers which a town's zoning ordinance may confer on the board of adjustment and does not include hearing appeals.

**Am Jur 2d, Zoning and Planning §§ 745 et seq.**

4. **Zoning § 114 (NCI4th)— board of adjustment decision—judicial review by certiorari—sufficiency of petition**

A petition for a writ of certiorari seeking judicial review of the decision of a town zoning board of adjustment was required to comply only with the provisions of N.C.G.S. § 160A-388(e) and was not subject to dismissal because it was not verified, did not contain an undertaking for costs, was not returnable to the superior court, and did not give respondents ten days written notice prior to the date of its return as required by Rule 19 of the General Rules of Practice for Superior and District Courts.

**Am Jur 2d, Zoning and Planning § 1020.**

Appeal by respondents from order entered 18 December 1992 by Judge Henry V. Barnette, Jr. in Wake County Superior Court. Heard in the Court of Appeals 2 March 1994.

This action arises out of the decision of the Morrisville Board of Commissioners to approve petitioners' proposed building of a regional facility for solid waste and collection on property located in the

Town of Morrisville. Respondents, who own land in the vicinity of the property at issue, petitioned the Town Board of Commissioners to reconsider its approval of the facility. At the same time, respondents also filed a petition for "interpretation and administrative review" of the decision of the Board of Commissioners with the Morrisville Board of Adjustment asking the Board of Adjustment to reverse the decision of the Board of Commissioners and to interpret the Zoning Regulations.

On 23 March 1992, the Town Board of Commissioners reconsidered its approval of the site plan, and on 13 April 1992, the Board of Commissioners approved the site plan again by a vote of three to two. On 20 April 1992, petitioners filed a motion to dismiss respondents' petition for interpretation and administrative review of the decision of the Board of Commissioners with the Board of Adjustment on the basis that the Board of Adjustment did not have the authority to review the Board of Commissioners' decision. The Board of Adjustment denied petitioners' motion, and on 21 April 1992, the Morrisville Board of Adjustment began its hearing based on respondents' petition. Subsequently, on 12 August 1992 the Board of Adjustment entered a decision and order reversing the Board of Commissioners' approval of the site plan.

In September 1992, petitioners filed a petition for writ of certiorari in Wake County Superior Court, which petition the superior court granted. Respondents filed a motion to dismiss and set aside petitioners' writ of certiorari "for failure of the petition to meet the requirements of N.C.G.S. § 160A-388(e) and Rule 19 of the North Carolina General Rules of Practice." On 29 September 1992, petitioners filed a motion pursuant to N.C.R. Civ. P. 15 and Rule 1 of the General Rules of Practice to amend their writ of certiorari to include a verification. Subsequently, the trial court denied respondents' motion to dismiss and set aside the writ of certiorari and granted petitioners' motion to amend the writ.

On 18 December 1992, Judge Henry V. Barnette, Jr. entered an order concluding that the Board of Adjustment did not have jurisdiction to reverse the decision of the Board of Commissioners and vacated the 12 August 1992 decision of the Board of Adjustment. From this decision, respondents appeal.

*Poyner & Spruill, by Lacy H. Reaves and John L. Shaw, for petitioner-appellees Browning-Ferris Industries, Inc. and Bobby L. Murray; John E. Bugg for petitioner-appellee Jonathan Garrity.*

*Maupin Taylor Ellis & Adams, P.A., by John C. Cooke and William J. Brian, Jr., for respondent-appellants Southport Business Park, Limited Partnership and Morrisville Associates.*

ORR, Judge.

Petitioner Bobby L. Murray owns a 17.46 acre tract of undeveloped land in Wake County within the town limits of the Town of Morrisville. In this action, petitioners sought a building permit or zoning certificate to build a Regional Facility for solid waste and collection on a portion of this property. Petitioner Jonathan Garrity is the vendee under a contract for sale of the subject property, and he would be the developer and owner of the Proposed Regional Facility. Petitioner Browning-Ferris Industries, Inc. (BFI) is a solid waste collection and disposal firm that wants to lease the facility. Respondent Southport Business Park Limited Partnership owns a business park complex located immediately west and across Aviation Parkway from the subject property. Respondent Morrisville Associates is a general partnership that owns an undeveloped tract of land south of and adjacent to the subject property.

In obtaining approval from the Board of Commissioners to build the regional facility within the town limits of Morrisville, petitioners followed the procedure outlined in the Zoning Regulations for the Town of Morrisville (the "Zoning Regulations"). Article II, § 18.2 of the Morrisville Zoning Regulations states, "No building permit or certificate of zoning compliance shall be issued until the required site plan of the proposed use or development has been approved by the town board with a recommendation from the planning board." Article XVII of the Zoning Regulations defines "town board" as the Town Board of Commissioners.

Under Article II, § 18.7, "[t]he owner or developer shall submit for consideration by the site plan/subdivision review committee a site plan prepared and certified by a registered engineer, architect, landscape architect, or land surveyor." Further, Article II, § 18.8 states:

The planning board, after receiving a recommendation from the site plan/subdivision review committee, shall review the site plan with respect to the procedures and requirements of this ordinance and any changes or additions which may be necessary to comply with this ordinance and any other applicable local or state law. . . . The planning board shall submit their recommendation on the site plan to the town board [of commissioners] for their review.

Thereafter, Article II, § 18.9 provides, "[t]he town board [of commissioners] will review and approve the site plan as proposed, or subject to modification, or disapprove the plan."

In the present case, the property at issue is zoned as an Industrial Management District under the Zoning Regulations. On 20 December 1991, pursuant to the Zoning Regulations, petitioners submitted a proposed site plan for the regional facility to the Morrisville site plan review committee. The review committee reviewed the plan and returned it to petitioners with comments on 3 January 1992.

On 15 January 1992, petitioners revised the plan and re-submitted it to the review committee for further review, and on 23 January 1992, the review committee presented the revised site plan to the planning board recommending that the site plan be approved as revised with the condition that a legal access to the Wake County sewer line be obtained and adequate capacity be available in the sewer line to serve the site. The planning board reviewed the revised site plan and voted unanimously to recommend the plan for approval to the Morrisville Town Board of Commissioners on the condition that the plan be revised as recommended by the review committee and that branch valves be installed for fire hydrants. On 10 February 1992, the Town Board of Commissioners unanimously approved the site plan subject to certain conditions. Thereafter, respondents asked the Board of Commissioners to reconsider its decision and petitioned the Board of Adjustment for a reversal of the decision of the Board of Commissioners. The Board of Commissioners again approved the site plan, and the Board of Adjustment reversed this decision.

## I.

[1] The fundamental substantive issue presented by this appeal is whether the Town Board of Adjustment has jurisdiction to review and reverse the decision of the Town Board of Commissioners. At the outset, we note that the Board of Adjustment is not a part of the pro-

cedure outlined for obtaining approval of a site plan prior to the issuance of a building permit or zoning compliance certificate outlined in Article II of the Zoning Regulations. Respondents contend, however, that the Morrisville Town Board of Adjustment had the power to review and reverse the Morrisville Town Board of Commissioners' decision to approve petitioners' site plan under N.C. Gen. Stat. § 160A-388(b). We disagree.

N.C. Gen. Stat. § 160A-388(b) (1987 & Supp.) states:

> (b) The board of adjustment shall hear and decide appeals from and review any order, requirement, decision, or determination *made by an administrative official charged with the enforcement of any ordinance adopted pursuant to [Part 3 of Article 19 of Chapter 160A]*. An appeal may be taken by any person aggrieved or by an officer, department, board, or bureau of the city. . . . The board of adjustment may reverse or affirm, wholly or partly, or may modify the order, requirement, decision, or determination appealed from, and shall make any order, requirement, decision, or determination that in its opinion ought to be made in the premises. To this end the board shall have all the powers of the officer from whom the appeal is taken.

(Emphasis added.)

On the issue of statutory construction, our Supreme Court stated in *Fowler v. Valencourt*, 334 N.C. 345, 348, 435 S.E.2d 530, 532 (1993):

> In construing a statute, the Court must first ascertain the legislative intent to assure that the purpose and intent of the legislation are carried out. . . . To make this determination, we look first to the language of the statute itself. . . . If the language used is clear and unambiguous, the Court does not engage in judicial construction but must apply the statute to give effect to the plain and definite meaning of the language.

(Citation omitted.)

The statutory language at issue in the case *sub judice* is that the Board of Adjustment has the ability to hear and decide appeals from an order, requirement, decision, or determination *"made by an administrative official charged with the enforcement of any ordinance adopt-ed pursuant to"* Part 3 of Article 19 of Chapter 160A. (Emphasis added.) Thus, the issue presented is whether the Board of Commissioners falls under the definition of an "administrative official."

N.C. Gen. Stat. § 160A-1(3) (1987) defines "board of commissioners" as "the governing *board* of a city." (Emphasis added.) Black's Law Dictionary defines "official" as "a *person* invested with the authority of an office." (Emphasis added.) Under N.C. Gen. Stat. § 160A-388(b), although an appeal to the Board of Adjustment can only be taken from an order, requirement, decision, or determination "made by an administrative official", the appeal may be taken by "any person aggrieved or by an officer, department, *board*, or bureau of the city." By including "board" in the list with "any person aggrieved or . . . an officer," the Legislature in effect recognized the difference between a board and a person or officer. Thus, the Board of Commissioners does not fall under the definition of a "person."

Further, case law in this State refers to individuals, not boards, when referring to "administrative officials" in the context of N.C. Gen. Stat. § 160A-388(b). *See, e.g., In re Pine Hill Cemeteries, Inc.,* 219 N.C. 735, 738, 15 S.E.2d 1, 3 (1941) (The board of adjustment "is authorized to hear and decide appeals from and review any order, requirement, decision or determination made by the *building inspector* or other administrative official charged with the enforcement of zoning ordinances.") (emphasis added); *Midgette v. Pate,* 94 N.C. App. 498, 502, 380 S.E.2d 572, 575 (1989) ("The board of adjustment is an administrative body with quasi-judicial power whose function is to review and decide appeals which arise from the decisions, orders, requirements or determinations of administrative officials, *such as building inspectors and zoning administrators.*") (emphasis added); *Grandfather Village v. Worsley,* 111 N.C. App. 686, 688, 433 S.E.2d 13, 14, *disc. review denied,* 335 N.C. 237, 439 S.E.2d 146 (1993) ("N.C.G.S. § 160A-388(b) governs an appeal from a decision of a city's *zoning administrator . . . .*") (emphasis added).

Thus, we conclude that the Legislature did not intend to include Board of Commissioners under the term "administrative official," and N.C. Gen. Stat. § 160A-388(b), by its plain and unambiguous language, does not, therefore, confer the right on the Board of Adjustment to hear appeals from the Board of Commissioners. Our conclusion that the Board of Adjustment does not have the power to review the decision of the Board of Commissioners based on the language found in N.C.G.S. § 160A-388(b) is further bolstered by the decision of the United States District Court for the Eastern District of North Carolina in *Mays-Ott Co., Inc. v. Town of Nags Head,* 751 F. Supp. 82 (E.D.N.C. 1990). *Mays-Ott* involved a zoning dispute between plaintiff and the Town of Nags Head. Plaintiff brought an action against

the Town of Nags Head pursuant to 42 U.S.C. § 1983. Subsequently, the Town of Nags Head moved for summary judgment on the basis that plaintiff had failed to exhaust his administrative remedies by following the appeals procedure outlined by the Town's zoning ordinance.

The zoning ordinance for the Town of Nags Head allowed appeals to the Board of Adjustment "from any orders or decisions made by *administrative officials." Mays-Ott*, 751 F. Supp. at 86 (emphasis added). On appeal, the United States District Court for the Eastern District of North Carolina noted that plaintiff was not appealing from a decision made by the building inspector, but that plaintiff's complaint was with a decision of the Town's Board of Commissioners to refuse to extend plaintiff's site plan. The Court then stated that "defendant has not pointed out any administrative procedure by which plaintiff could have appealed the Board of Commissioners' refusal to extend the site plan approval . . . ." *Id.* at 87.

Thus, the *Mays-Ott* Court effectively read the language that plaintiff had the right to appeal to the Board of Adjustment "from any orders or decisions made by administrative officials" as arguably including decisions from a building inspector but definitely not including a decision from the Board of Commissioners. This interpretation is consistent with our conclusion that the language in N.C.G.S. § 160A-388(b) does not confer the right on the Board of Adjustment to hear appeals from orders or decisions of the Board of Commissioners.

Respondents contend, however, that the Legislature intended for N.C. Gen. Stat. § 160A-388(b) to confer on the Board of Adjustment the power to hear appeals from any administrative decision, not just decisions made by administrative "officials." In support of this contention, respondents cite authority from other States. Based on our review of the law in this State and the distinction North Carolina Courts have drawn between an official and a board, we find respondents' argument without merit.

## II.

**[2]**  Next, respondents argue that N.C. Gen. Stat. § 160A-388(c) and the Morrisville Zoning Regulations broaden the jurisdiction of the Morrisville Board of Adjustment to hear the present action. We disagree.

N.C. Gen. Stat. § 160A-388(c) (1987 & Supp.) states:

> (c) The zoning ordinance may provide that the board of adjustment may permit special exceptions to the zoning regulations in classes of cases or situations and in accordance with the principles, conditions, safeguards, and procedures specified in the ordinance. The ordinance may also authorize the board to interpret zoning maps and pass upon disputed questions of lot lines or district boundary lines and similar questions as they arise in the administration of the ordinance. The board shall hear and decide all matters referred to it or upon which it is required to pass under any zoning ordinance.

First respondents contend that the language in N.C. Gen. Stat. § 160A-388(c) which states that the "board shall hear and decide all matters referred to it *or upon which it is required to pass under any zoning ordinance*" in conjunction with Article XIII, § 2.1 of the Morrisville Zoning Regulations gives the Board of Adjustment jurisdiction over this action. Article XIII, § 2.1 of the Zoning Regulations states:

> The board of adjustment shall have the following powers and duties:

> 2.1 *Administrative review.* To hear and decide appeals where it is alleged by the appellant that there is error in any order, requirement, permit, decision, determination, or refusal made by the building official or other administrative officials in the carrying out or enforcement of any provisions of the ordinance.

In *Tate v. Board of Adjustment of the City of Asheville*, 83 N.C. App. 512, 515, 350 S.E.2d 873, 875 (1986), this Court held that the language of N.C. Gen. Stat. § 160A-388(c) does not confer on the Board of Adjustment "any powers that are not specifically enumerated in either the statute or the ordinance." Our review of the language in both the statute and Article XIII, § 2.1 of the Zoning Regulations shows no provision by which the Board of Adjustment is given the power to hear appeals from an order or decision of the Board of Commissioners. The language of Article XIII, § 2.1 is similar to the language found in N.C.G.S. § 160A-388(b) in that it allows the Board of Adjustment to hear appeals from an order or decision "made by the building official or other administrative officials in the carrying out or enforcement of any provisions of the ordinance." As we have

already concluded, the Board of Commissioners is not an administrative official. Respondents' first argument is without merit.

[3]   Next, respondents argue that the language in N.C. Gen. Stat. § 160A-388(c) which states that "[t]he ordinance may also authorize the board to interpret zoning maps and pass upon disputed questions of lot lines or district boundary lines and similar questions as they arise in the administration of the ordinance" in conjunction with Article XIII, § 3 of the Zoning Regulations, entitled "Filing and notice for an appeal," confers jurisdiction on the Board of Adjustment over this action. We disagree.

The language of N.C.G.S. § 160A-388(c) which respondents have cited does not address the right of the Board of Adjustment to hear "appeals." Instead, this language lists specific powers which a town's ordinances may confer on the Board of Adjustment, none of which includes hearing appeals. The ordinances may authorize the Board of Adjustment to interpret zoning maps or to pass upon disputed questions of lot lines or district boundary lines and similar questions as they arise in the administration of the ordinance. These are specific powers, which do not include the power to hear an appeal from the Board of Commissioners. "[S]tatutes which vest local governments with certain powers are to be strictly construed against the existence of the power." *Tate,* 83 N.C. App. at 515, 350 S.E.2d at 875. Accordingly, respondents' second argument is without merit.

### III.

[4]   Respondents also contend that the trial court erred in denying their motion to dismiss and set aside petitioners' petition for writ of certiorari. Respondents base their contention on the fact that petitioners' writ of certiorari was not verified, did not contain an undertaking for costs, was not returnable to the Superior Court, and did not give the respondents ten days written notice prior to the date of its return as required by Rule 19 of the North Carolina General Rules of Practice for Superior and District Courts. We disagree.

In *Little v. City of Locust,* 83 N.C. App. 224, 224, 349 S.E.2d 627, 628 (1986), *disc. review denied,* 319 N.C. 105, 353 S.E.2d 111 (1987), petitioners brought proceedings for *certiorari* "in the Stanly County Superior Court to obtain a judicial review of three decisions made by the Zoning Board of Adjustment of the City of Locust." This Court stated that "G.S. 160A-388(e) makes all such decisions reviewable by 'proceedings in the nature of certiorari' and *all that is needed is the*

*record of the decision involved and a Superior Court judge to review it." Id.* at 225, 349 S.E.2d at 628 (emphasis added). Further, this Court stated that "G.S. 160A-388(e) makes zoning board decisions judicially reviewable upon complying with its terms." *Id.* at 225, 349 S.E.2d at 629.

Respondents have not argued, and the record does not show, that petitioners failed to comply with the terms of N.C. Gen. Stat. § 160A-388(e) in filing their petition for writ of certiorari in this action. Respondents' assignment of error is without merit.

## IV.

Finally, respondents contend that the trial court erred in allowing petitioners to amend their petition for writ of certiorari to include a verification. Respondents' basis for presenting this argument is to show that petitioners failed to comply with the requirement in Rule 19 that the writ of certiorari be verified and to further their argument that petitioners' writ should have been dismissed. Based on our holding above that petitioners were not required to verify their petition for writ of certiorari, we need not address respondents' final assignment of error.

Affirmed.

Judges WELLS and WYNN concur.